JOANN ROMAN ET AL. *v.* CITY OF STAMFORD
(5912)

BORDEN, STOUGHTON and FOTI, Js.

Argued May 18—decision released September 13, 1988

*James V. Minor,* assistant corporation counsel, with whom, on the brief, were *Mary E. Sommer,* corporation counsel, and *Sherwood R. Spelke,* for the appellant-appellee (defendant).

*Paul J. Pacifico,* for the appellee-appellant (named plaintiff).

BORDEN, J. The defendant city of Stamford appeals from the judgment of the trial court rendered, after a jury trial, in favor of the named plaintiff, Joann Roman, in the amount of $25,000, and in favor of the plaintiff Madeline Roman, in the amount of $4690. The named plaintiff cross appeals from the trial court's denial of her motion to set aside the jury verdict as being inadequate. The issue dispositive of both the appeal and the cross appeal is whether a municipality is liable in negligence where an automobile is struck by a falling tree located within the limits of the roadway, because a city charter provision directs the city's park commission to provide for the care and control of all trees within the limits of public roads. We hold that it is not. We therefore find error on the appeal, and we need not reach the issue raised by the cross appeal.

The jury could reasonably have found the following facts. On October 25, 1980, the named plaintiff was a passenger in an automobile owned by the plaintiff Madeline Roman. As the automobile was traveling on

Lakeside Drive in Stamford, a rotted pine tree fell from property owned by the defendant onto the roadway, crushing the roof of the automobile and injuring the named plaintiff. The tree was located within the roadway limits, but approximately seventeen feet from the edge of the paved portion of the road, in a heavily wooded area. No part of the tree overhung the traveled portion of the road.

The plaintiffs' sole theory of liability on appeal, and the sole theory of liability that the trial court submitted to the jury, is "that there was a duty on the part of the city to maintain the trees and care for the trees."[1] The court instructed the jury that, by enacting § 595.1[2] of its charter, the defendant undertook a private duty to be responsible for the care and maintenance of trees within the limits of all public roads, and that its fail-

---

[1] The plaintiffs' two count complaint alleged a defective highway under General Statutes § 13a-149 and a nuisance. The trial court charged these theories out of the case by instructing the jury not to consider them because there was no evidence to support them. The plaintiffs did not challenge in the trial court, and do not challenge on appeal, this action of the trial court.

The court then instructed the jury that "we're down to one and only one cause of action that you can consider in this case. And that's the allegations throughout this complaint, and they're interspersed between the first and second count, that there was a duty on the part of the city to maintain the trees and care for the trees." Because of our conclusion that the defendant was not liable to the plaintiffs under the legal theory submitted to the jury, we need not address the defendant's other claim of error, namely, that the court erred in submitting the case to the jury on a theory of negligence because the complaint, even read broadly, did not embrace such a theory.

[2] Section 595.1 of the charter of the city of Stamford, adopted in 1977 and entitled "Powers and Duties of the Park Commission," provides: "The Park Commission, subject to the approval of the Mayor, shall determine all park policies for the City of Stamford except as may be determined by the Board of Representatives and to that end it: (1) shall establish, construct and maintain all parks; (2) shall provide for the care and control of all trees and shrubs within the limits of any public road; (3) shall establish such rules as are necessary for the proper use and maintenance of the parks; and (4) may receive gifts of money or property in the name of the City of Stamford for park purposes."

ure to carry out this duty with reasonable care would be a basis for tort liability to the plaintiffs.

The defendant claims that the charter provision in and of itself could not be the basis of liability in this case, and that the trial court therefore erred in denying its motion for a directed verdict and its motion to set aside the verdict. We agree.[3]

Before we address the merits of the defendant's claim, however, we must make clear what this case does not involve. It does not involve municipal liability based on nuisance, nor does it involve municipal liability based on the defective highway statute, General Statutes § 13a-149. Both of these theories of liability were contained in the plaintiffs' complaint but were not submitted to the jury because of lack of evidence. See footnote 1, supra. Nor do the plaintiffs attempt to support the judgment on the theory that the defendant is liable in negligence because its conduct constituted the ministerial operation of a city park. See *Gauvin* v. *New Haven,* 187 Conn. 180, 186, 445 A.2d 1 (1982).

Indeed, the plaintiffs and the trial court eschewed any claim of liability based on the distinction between governmental and ministerial duties. See id., 184. The trial court did not instruct the jury in accordance with that distinction, and the plaintiffs neither requested such an instruction nor excepted to the instructions as given. This case was decided in the trial court and argued on appeal solely upon the theory that, by enacting a charter provision pertaining to the care and maintenance of trees within the limits of all public roads, the defendant undertook a private duty to be responsible for such trees, and that its failure to carry out this duty with reasonable care was therefore actionable.

---

[3] Because our conclusion with respect to the defendant's appeal requires that judgment be directed in favor of the defendant, we need not address the issue of the adequacy of the verdict raised in the named plaintiff's cross appeal.

The plaintiffs and the trial court relied wholly upon *Dyer* v. *Danbury,* 85 Conn. 128, 81 A. 958 (1911), to support the theory that the city's charter provision created an actionable private duty. In *Dyer,* our Supreme Court noted in dictum that "[w]here . . . some special power or privilege out of which grow public duties, primarily for the benefit of its own citizens, is granted to a municipality at its request, or where with its consent some special duty, not belonging to it under the general laws, is imposed upon it . . . the municipality is in a sense performing a private duty, and although no liability for damages is imposed by statute for negligence in the performance of such duties, the municipality is nevertheless liable for it." Id., 131. For this proposition, *Dyer* relied upon *Jones* v. *New Haven,* 34 Conn. 1 (1867), where the court "held that the declaration stated a good cause of action, upon the ground that it therein appeared that the State had authorized the city as a special privilege to assume control of the 'protection and preservation' of the trees, of which the pruning and removal of the dead limbs was a part, and that the city had assumed the exclusive control of the trees, and the duty of protecting them, for the special benefit of its own inhabitants, and that the duty was a private, as distinguished from a governmental, one." *Dyer* v. *Danbury,* supra, 132–33. Even if we assume, arguendo, that *Dyer* and *Jones* supported the view that a city charter provision in and of itself may create an actionable private duty as a matter of law, we conclude that this theory of municipal liability is no longer viable under Connecticut law.[4]

---

[4] We note that since *Dyer* was decided in 1911, neither it nor *Jones* has been applied by the Supreme Court or this court to impose liability on a municipality on the theory of a violation of a private duty on which the plaintiffs rely in the present case. See *Comba* v. *Ridgefield,* 177 Conn. 268, 271, 413 A.2d 859 (1979); *Karnasiewicz* v. *New Britain,* 131 Conn. 691, 694, 42 A.2d 32 (1945); *Adley Express Co.* v. *New Haven,* 129 Conn. 560, 564, 29 A.2d 841 (1943); *Bacon* v. *Rocky Hill,* 126 Conn. 402, 409, 11 A.2d 399

The theoretical construct underlying *Dyer* and *Jones* is a doctrine of municipal assumption of liability. *Dyer* and *Jones* both teach that a municipality assumes a "private duty" where "some *special power or privilege . . . is granted to a municipality at its request* or where with its consent *some special duty, not belonging to it under the general laws, is imposed upon it . . . ."* (Emphasis added.) *Dyer* v. *Danbury,* supra, 131. It is clear that this construct, wherein special powers are granted to or imposed upon the municipality, harkens back to the days before the advent of the principle of home rule. Home rule legislation in Connecticut was first enacted in 1915, repealed in 1929, and revived in 1951. See *Caulfield* v. *Noble,* 178 Conn. 81, 85 n.2, 420 A.2d 1160 (1979). That legislation is now codified in General Statutes §§ 7-187 through 7-201. Home rule became a constitutional fixture in Connecticut by virtue of article tenth, § 1, which provides, in pertinent part, that " '[a]fter July 1, 1969, the general assembly shall enact no special legislation relative to the powers, organization, terms of elective offices or form of government of any single town, city or borough . . . .' The purpose of home rule is twofold: 'to relieve the General Assembly of the burdensome task of handling and enacting special legislation of local municipal concern and to enable a municipality to draft and adopt a home rule charter or ordinance which shall constitute the organic law of the city . . . . [H]ome rule legislation was enacted "to enable municipalities to con-

---

(1940); *Hoffman* v. *Bristol,* 113 Conn. 386, 391–92, 155 A. 499 (1931); *Spitzer* v. *Waterbury,* 113 Conn. 84, 87, 154 A. 157 (1931); *Thelin* v. *Downs,* 109 Conn. 662, 669, 145 A. 50 (1929); *Rogers* v. *Meriden,* 109 Conn. 324, 327–28, 146 A. 735 (1929); *Vezina* v. *Hartford,* 106 Conn. 378, 380–81, 138 A. 145 (1927); *Riccio* v. *Plainville,* 106 Conn. 61, 64–65, 136 A. 872 (1927); *Gelford* v. *Hartford,* 85 Conn. 689, 693, 84 A. 85 (1912); *Wischenbart* v. *New Britain,* 12 Conn. Sup. 321, 323 (1944); but see *Water Commissioners* v. *Manchester,* 87 Conn. 193, 201–202, 87 A. 870 (1913); *Mitchell* v. *Meriden,* 3 Conn. Cir. Ct. 498, 217 A.2d 487 (1965), cert. denied, 155 Conn. 718, 231 A.2d 282 (1967); *Sturges* v. *East Haven,* 9 Conn. Sup. 351 (1941).

duct their own business and control their own affairs to the fullest possible extent in their own way . . . . ' " *Caulfield* v. *Noble,* [supra, 86–87], quoting *Fragley* v. *Phelan,* 126 Cal. 383, 387, 58 P. 923 (1899)." *Shelton* v. *Commissioner,* 193 Conn. 506, 520–21, 479 A.2d 208 (1984).

The question necessarily presented by this case, then, is whether the *Jones-Dyer* construct of municipal liability continues to be a valid conceptualization of the doctrine of actionable private duties of a municipality. We hold that it does not.

Unlike the *Dyer* and *Jones* doctrine of assumption of municipal liability based upon a charter provision, the modern construct of municipal liability rests upon distinctly different considerations. Recently, in *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 544 A.2d 1185 (1988), our Supreme Court examined the doctrine of municipal liability and immunity in Connecticut. The court reiterated its adherence to the "public duty doctrine," which distinguishes between so-called public duties and so-called private duties. " ' "[I]f the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages." ' " Id., 166, quoting *Shore* v. *Stonington,* 187 Conn. 147, 152, 444 A.2d 1379 (1982), quoting *Leger* v. *Kelley,* 142 Conn. 585, 589–90, 116 A.2d 429 (1955). "[T]he public duty doctrine provides the starting point of the analysis" with regard to the question of municipal liability. *Gordon* v. *Bridgeport Housing Authority,* supra, 170. Thus, "the court looks to

see whether there is a public or private duty." Id. This determination involves a question of law. Id.[5]

"In the application of [the public duty doctrine], the problem is always to determine whether the [action] involved does create a duty to the individual. . . . [I]t appears that the test is this: If the duty imposed upon the public official . . . is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the [action] is one which imposes upon the official a duty to the individual, and if the official is negligent in the performance of that duty he is liable to the individual." *Leger* v. *Kelley,* supra, 590–91.

It is clear that this construct of an actionable private duty is very different from that articulated in *Dyer* and *Jones.* Under this modern construct, we conclude that the duty involved in the present case on the part of the city to maintain and care for the trees within the limits of all public roads does not constitute a private duty. The tree in question was one of at least 100,000 trees growing on approximately 250 miles of land bordering Stamford roads, for which the city's park commission was responsible. The duty involved here was not of such a nature that its performance would likely affect any passengers on city roads in a manner different in kind from the way it affects the public at large. The

---

[5] We note that prior to *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 544 A.2d 1185 (1988), there appeared to be a distinction between an action in which liability was sought to be imposed directly upon the municipality; see, e.g., *Couture* v. *Board of Education,* 6 Conn. App. 309, 505 A.2d 432 (1986); and an action in which liability was sought to be imposed on a municipality based upon the negligent conduct of a municipal officer or employee for which the municipality may be derivatively liable pursuant to General Statutes § 7-465. See, e.g., *Shore* v. *Stonington,* 187 Conn. 147, 444 A.2d 1379 (1982); *Sestito* v. *Groton,* 178 Conn. 520, 423 A.2d 165 (1979). The *Gordon* court, however, in examining the liability of a municipality did not appear to distinguish between a municipality's direct liability, and its derivative liability for the actions of its officers and employees.

duty to maintain and care for such trees is aimed principally at preserving the scenic and environmental values fostered by their continued viability, and only incidentally at the safety of travelers on the adjoining highway.

Moreover, the municipal duty regarding highway safety is encompassed and necessarily limited by the defective highway statute; General Statutes § 13a-149; and by the corresponding common law doctrine of liability for creation of a nuisance. See, e.g., *Lukas* v. *New Haven,* 184 Conn. 205, 209–10, 439 A.2d 949 (1981). It would be inconsistent with the limits of those bases of liability to find a private duty in the present case.

Once it is determined that the duty involved in the present case is a public duty, the issue of municipal liability may also turn upon whether the specific act in issue was ministerial or discretionary. *Gordon* v. *Bridgeport Housing Authority,* supra, 168–70, 181. "When municipalities are engaged in proprietary or ministerial activities, their actions are not considered governmental and, accordingly, they do not enjoy immunity from negligence resulting from such activities. *Gauvin* v. *New Haven,* supra, 184." *Couture* v. *Board of Education,* 6 Conn. App. 309, 312, 505 A.2d 432 (1986); see also *Brown* v. *Branford,* 12 Conn. App. 106, 110–11, 529 A.2d 743 (1987). A "ministerial" act, as opposed to a "discretionary" act, " 'refers to [one] which is to be performed in a prescribed manner without the exercise of judgment or discretion.' " *Fraser* v. *Henninger,* 173 Conn. 52, 60, 376 A.2d 406 (1977), quoting *Wright* v. *Brown,* 167 Conn. 464, 471, 356 A.2d 176 (1975). Municipal liability for the breach of a public duty attaches "only if the act complained of is a ministerial act or [if] one of the narrow exceptions to discretionary acts [outlined in *Shore* v. *Stonington,* supra,] applies." *Gordon* v. *Bridgeport Housing Authority,* supra, 170.

A city charter provision, therefore, will not create liability as a matter of law. The judicial inquiry has been refined since the days of *Jones* and *Dyer* by requiring the trier of fact, where an alleged breach of a public duty is involved, to assess the nature of the governmental action involved: " 'Whether the duty is directly imposed upon the city or permissive, that is, one which it voluntarily assumed, as in this case, does not change the character of the act or function. The duty in either case will be governmental if the nature and character of [the] act or function be such. *Pope* v. *New Haven,* [91 Conn. 79, 82, 99 A. 51 (1916)].' *Hannon* v. *Waterbury,* 106 Conn. 13, 17, 136 A. 876 (1927)." *Couture* v. *Board of Education,* supra, 313. The existence, or nonexistence for that matter, of a charter provision on the subject is no longer determinative of the question of municipal liability where a public duty has allegedly been breached. "Whether the acts complained of . . . were governmental or ministerial is a factual question which depends upon the nature of the act complained of. . . . If the acts are considered governmental in character [by the trier of fact], then the defendant is not liable because the plaintiff has not alleged statutory liability and the defendant is otherwise immune." (Citations omitted.) *Gauvin* v. *New Haven,* supra, 186.

Accordingly, the trial court erred in instructing the jury that the city charter provision, as a matter of law, created an actionable duty to the plaintiffs. Because the plaintiffs' sole theory of liability, upon which the case was presented to the jury, did not constitute a valid ground for recovery, the court should have granted the defendant's motion for a directed verdict and its motion to set aside the verdict.

There is error on the appeal, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

The cross appeal is dismissed.

In this opinion the other judges concurred.